IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                              :
JOSE ECHEVARRIA,                              :
                                              :    Civil No. 16-3859 (RBK)
                        Plaintiff,            :
                                              :    **OPINION**
        v.                                    :
                                              :
ACTING COMMISSIONER OF                        :
SOCIAL SECURITY,                              :
                                              :
                        Defendant.            :
_____        :

**KUGLER**, United States District Judge:

    This matter comes before the Court upon the appeal of Plaintiff Jose Echevarria (Doc. No. 10) for review of the final determination of the Acting Commissioner of Social Security. An Administrative Law Judge entered a partially favorable decision (Doc. No. 8-2) based on the Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Title II and XVI of the Social Security Act. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED.**

**I.    BACKGROUND**

    Plaintiff applied for DIB and SSI on December 6, 2011, alleging an onset of disability since January 1, 2007, due to "leg, hand, nose [and] ankle injuries." (R. at 210–21, 269.) Plaintiff was required to prove that he became disabled on or before December 31, 2013, the date upon which his insured status expired. *See* 42 U.S.C. § 423(a)(1); 20 C.F.R. §§ 404.130, 404.131(a) (2004); *Matullo v. Bowen*, 936 F.2d 240, 244 (3d Cir. 1990). Plaintiff's claims were denied after initial review on January 13, 2012, and denied again upon reconsideration on August 24, 2012. (R. at

110–122, 128–137.) Administrative Law Judge Jonathan L. Wesner ("ALJ") held a hearing at Plaintiff's request on February 28, 2014 and issued a partially favorable decision on April 16, 2014. (*Id.* at 38-51, 57–76.) The ALJ found that Plaintiff was disabled as of February 28, 2014, the date his age category changed,[1] but was not disabled prior to that date. (*Id.*) Prior to February 28, 2014, based on Plaintiff's age category, there were occupations in the national economy that Plaintiff could perform despite his alleged injuries. (*Id.* at 50.) The ALJ determined that Plaintiff could perform light work but was limited to standing only two hours in an eight-hour workday. (*Id.* at 45.) A vocational expert testified at the hearing that "seated light work" existed in "the real world." (*Id.* at 72.) The expert also analyzed jobs tailored to the Plaintiff's specific limitations. (*Id.* at 72–74.) He identified jobs that such an individual could perform, namely electrical accessories assembler, small products assembler, and bottling line attendant. (*Id.*) The vocational expert explicitly confirmed that all three of these jobs were classified as light, elaborating that an electrical accessories assembler is predominately seated all day and a small products assembler is a bench work job as well. (*Id.* at 73–74.)

On February 28, 2014, Plaintiff became a person of advanced age under the Social Security Act. (*Id.*) Advanced age significantly affects a person's ability to adjust to other work. *See* 20 C.F.R. §§ 404.1563(e), 416.963(e). Thus, the ALJ denied Plaintiff's application for DIB, but found that Plaintiff was entitled to SSI as of February 28, 2014, the date on which his age category changed and he became disabled. (R. at 51.) Plaintiff then requested review of the ALJ's decision by the Appeals Council. (*Id.* at 33–36, 341–344.) The Appeals Council denied Plaintiff's request

---

[1] The ALJ mistakenly cites February 28, 2014 as the date on which Plaintiff turned 55 years and became a person of advanced age under the Act. In fact, Plaintiff's 55th birthday occurred five months later on July 29, 2015. This inadvertence did not harm Plaintiff, but rather provided him an onset date of disability 5 months earlier than the date on which his age category changed. (*See* Def. Br. at 4.)

for review on April 27, 2016. (*Id.* at 1–7.) Having exhausted his administrative remedies, Plaintiff then filed a complaint in this Court on June 28, 2016 (Doc. No. 1).

**A. Plaintiff's Alleged Impairments**

A brief medical history of Plaintiff's ailments follows. On October 27, 2008, Plaintiff went to Sarasota Memorial Hospital complaining of right lower leg pain after being struck by a bat or another unidentified object. (R. at 390.) Plaintiff was examined and it was determined that he had an "obvious distortion of the right ankle area." (*Id.*) An x-ray showed a mildly displaced oblique fracture through the distal fibula shaft. (*Id.* at 376.) Plaintiff left the hospital without having the fracture treated. (*Id.* at 390-91.)

On October 28, 2008, Plaintiff went to the Doctors Hospital of Sarasota. (*Id.* at 380.) He complained of having moderate right foot and ankle pain. (*Id.*) Plaintiff was examined and it was determined that Plaintiff had moderate tenderness to the right ankle with moderate edema. (*Id.*) Plaintiff was diagnosed with a fracture of the right distal fibula. (*Id.* at 381.)

On November 1, 2008, Plaintiff underwent a repeat x-ray. (*Id.* at 388.) The x-ray continued to show an unstable right ankle with a distal fibular fracture and a widening of the mortise. (*Id.*) During a subsequent visit on November 6, 2008, Plaintiff underwent an open reduction internal fixation for a right lateral malleolus ankle fracture. (*Id.* at 386–387.) Three years later, on December 6, 2011, Plaintiff went to Central Florida Family Health Center Sanford. (*Id.* at 346.) Treatment notes from the visit indicated that Plaintiff had complained of pain when walking, as well as swelling when walking or standing. (*Id.*) Plaintiff further stated that he was unable to see a doctor due to his lack of insurance. (*Id.*) He reported that he experienced constant pain that radiated from the middle of his leg down to his foot, which improved when he applied no pressure. (*Id.*) After a physical examination, it was determined that Plaintiff's right lower extremity showed

increased pain on palpation of his right ankle, with tenderness up half of his tibia on palpation. (*Id.* at 347.) Plaintiff also exhibited decreased range of motion of his right ankle, with scarring observed on the lateral side. (*Id.*) He was provided a prescription for 7.5 mgs of Mobic to be taken twice daily. (*Id.*)

On January 25, 2012, Plaintiff was examined by Geovanny Chico, Doctor of Podiatry Medicine. (*Id.* at 351.) His examination showed swelling and tenderness of the right lateral malleolus, with moderate periarticular and lateral swelling. (*Id.*) Plaintiff's right ankle was also examined and was remarkable for painful and limited range of motion. (*Id.*) Following the inspection, Plaintiff received an injection for his right ankle joint consisting of dexamethasone phosphate and lidocaine. (*Id.*) It was recommended that Plaintiff "restrict activities to a minimum." (*Id.*)

On March 29, 2012, Plaintiff received another x-ray. (*Id.* at 350.) The x-ray revealed an open reduction and internal fixation of a distal fibular fracture with malleable plate and screw fixation, with anterior soft-tissue edema. (*Id.*) On April 4, 2012, Plaintiff received another injection of the right ankle. (*Id.* at 353.) The assessment taken at that time revealed right ankle pain with healed fibular fracture. (*Id.*) On October 20, 2013, x-rays from Plaintiff's ankle continued to show status post-open reduction and internal fixation of the distal right fibula, with callus formation. (*Id.* at 417.)

### B. The ALJ's Decision

The ALJ, after applying the five-step evaluation process of 20 C.F.R. § 404.1520, determined that prior to February 28, 2014, "the date [Plaintiff's] age category changed," Plaintiff could have performed other occupations in the national economy, including assembler, electrical accessories, small products assembler, and bottling line attendant. (*Id.* at 50.) The ALJ also

concluded that beginning on February 28, 2014, no jobs existed in significant numbers that Plaintiff could perform, which rendered him legally disabled. (*Id.* at 51.) Therefore, the ALJ decided that Plaintiff did not meet the Act's definition of disability prior to February 28, 2014, but became disabled on that date. (*Id.*) We discuss these findings in greater detail in our review below.

## II.  STANDARD OF REVIEW

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak*, 777 F.3d at 610 (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See, e.g.*, *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if a court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, this Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 927 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114). A district court's review of a final determination is a "qualitative exercise

5

without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III. DISCUSSION

The ALJ determined that Plaintiff did not meet the Act's definition of disability prior to February 28, 2014, but instead became disabled beginning on February 28, 2014. This Court finds that substantial evidence supports the ALJ's determination. Accordingly, the ALJ's decision is affirmed.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ used the established five-step evaluation process to determine whether Plaintiff was disabled. *See* 20 C.F.R. § 404.1520. For the first four steps of the evaluation process, the claimant has the burden of establishing his disability by a preponderance of the evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 611–12 (3d Cir. 2014). First, the claimant must show that he was not engaged in "substantial gainful activity" for the relevant time period. 20 C.F.R. § 404.1572. Second, the claimant must demonstrate that he has a "severe medically determinable physical and mental impairment" that lasted for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509. Third, either the claimant shows that his condition was one of the Commissioner's listed impairments, and is therefore disabled and entitled to benefits, or the analysis proceeds to step four. 20 C.F.R. § 404.1420(a)(4)(iii); *see also* 20 C.F.R. pt. 404, subpt. P, app. 1. Fourth, if the condition is not equivalent to a listed impairment, the claimant must show that he cannot perform his past work, and the ALJ must assess the claimant's "residual functional capacity" ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404. 1520(e). If the

6

claimant meets his burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other available work exists that the claimant is capable of performing based on his RFC, age, education, and work experience. *Id.*; 20 C.F.R. § 404.1520 (a)(4)(v). If the claimant can make "an adjustment to other work," he is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

Here, the ALJ first concluded that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of January 1, 2007 through the date upon which his insured status expired on December 31, 2013. (R. at 44.) Next, the ALJ found that up until the date when Plaintiff's insured status expired, Plaintiff had severe impairments, namely status post-open reduction and internal fixation of a distal fibular fracture with malleable plate and screw fixation in his right leg, but he did not have an impairment or a combination of impairments that met or equaled the severity of one of the listed impairments. (*Id.* at 45.) Based on a review of the record, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), although the ALJ determined the Plaintiff (a) could only stand for two hours in an eight-hour work day; (b) could not perform manipulative limitations; (c) could never climb ropes, ladders, and scaffolds; (d) could only occasionally climb stairs; (e) could never kneel, crouch, or crawl; and (f) could never be exposed to extreme heat, extreme cold, dampness, wetness, or humidity. (R. at 45.) The ALJ found Plaintiff unable to perform his past relevant work. (*Id.* at 49.)

Notwithstanding a finding that Plaintiff could no longer perform his past work, the ALJ concluded he was not prevented from engaging in other kinds of work until turning 55. After considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that prior to February 28, 2014, "the date [Plaintiff's] age category changed," Plaintiff could perform other

occupations in the national economy, including assembler, electrical accessories, small products assembler, and bottling line attendant. (*Id.* at 50.) The ALJ also concluded that beginning on February 28, 2014, no jobs existed in significant numbers that Plaintiff could perform, which rendered him disabled. (*Id.* at 51.) The ALJ concluded that Plaintiff did not meet the Act's definition of disability prior to February 28, 2014, but became disabled on that date. (*Id.*)

**A. The ALJ Properly Determined Plaintiff's Residual Functioning Capacity**

Plaintiff argues the ALJ should have found him disabled as of his 50th birthday under the Medical-Vocational Guidelines (the "Grids") because a finding that Plaintiff could only stand for two hours of an eight-hour work day meant that he only had the residual functional capacity to perform sedentary work, not "light seated work," and should have therefore been found legally disabled. (Pl. Br. at 6.) To be considered capable of "light work," an individual must have the ability to do "substantially all" of the activities encompassed by light work. 20 C.F.R. §§ 404.1567(b), 416.967(b). Plaintiff argues that the ALJ's finding that the limitation on Plaintiff's ability to stand for more than two hours is inconsistent with the instructions of SSR 83-10, which states that light work requires "a good deal of walking or standing" and the "frequent lifting or carrying of objects weighing up to 10 pounds." "Frequent" is defined as occurring from one-third to two-thirds of the time, meaning under this provision the lifting of 10-pound objects could occur from 2.66 hours a day to 5.33 hours in an 8-hour day. SSR 83-10. Plaintiff extrapolates that if Plaintiff is limited to standing two hours a day, he is necessarily barred from lifting 10-pound objects over that two-hour requirement. However, we don't find this to necessarily follow: the limitation the ALJ identified was for *standing* over two hours, not *lifting* ten-pound items "frequently," *i.e.* from 2.6 to 5.3 hours of an 8 hour day (while sitting at, say, a workbench), and thus does not prevent a finding that the Plaintiff can perform "substantially all" of the activities

8

required by light work.

In any event, the ALJ identified that Plaintiff would face potential limitations to the performance of light work and turned to a vocational expert to help him reach a determination. The Grids employ the vocational factors of age, education, and work experience in combination with the strength categories of work, including "sedentary" and "light seated" work. 20 C.F.R. Pt. §§ 404.1567(b) *et seq.*; *see also Heckler v. Campbell*, 461 U.S. 458, 461–62 (1983). When a claimant's qualifications correspond to all four of the criteria for one of the rules, the rule will direct a conclusion as to whether the claimant is disabled. *Id.* However, and as here, when a claimant's impairments are "somewhere in the middle" between the regulatory criteria for two strength categories of work, the ALJ is to advise the assistance of a vocational expert. *See* SSR 83-12.

Because Plaintiff's exertional limitations appeared to fall between "sedentary" and "light seated work," *i.e.* "somewhere in the middle," the ALJ correctly obtained the services of a vocational expert to ascertain the effect on the remaining occupational base. The vocational expert's opinion provided substantial evidence sufficient to support the ALJ's conclusion that Plaintiff was not disabled prior to February 28, 2014 because he had the residual functional capacity to perform light duty work and there were jobs in significant numbers in the national economy that Plaintiff could have performed. *See Martin v. Barnhart*, 240 F. App'x 941, 946 (3d Cir. 2007) ("The [vocational expert]'s testimony provides substantial evidence to support the ALJ's conclusion"); *Hence v. Astrue*, 2012 WL 6691573, at *8 (E.D. Va. Nov. 30, 2012) ("an RFC limiting standing or walking to about two hours does not mandate a finding that Hence could only perform sedentary work"), *report and recommendation adopted*, 2012 WL 6697109 (E.D. Va. Dec. 21, 2012); *Dick v. Colvin*, 2014 WL 3530004, at *8 (W.D. Pa. July 15, 2014) (where claimant

could lift the amount of weight associated with light work but was limited to standing or walking for three hours in a workday, his residual functional capacity "fell between two exertional levels," making reliance on a vocational expert "wholly appropriate").

### B. Program Operations Manual System Guidelines

Plaintiff argues the ALJ failed to apply DI 25025.015 D. of the POMS Guidelines. This provision addresses the use of a Grids rule as a framework when a claimant's exertional capacity falls between two rules that direct different disability findings. *See* POMS DI 25025.015. Plaintiff also relies on POMS DI 25015.006 to argue that a four-hour limitation to standing or walking would limit an individual to sedentary activities.

The Social Security Administration's Program Operations Manual System ("POMS") is the publicly available operation instructions for processing Social Security claims. *Artz v. Barnhart*, 330 F.3d 170, 176 (3d Cir. 2003) (citing *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385 (2003)); *see also POMS Home*, SOCIAL SECURITY ADMINISTRATION, https://secure.ssa.gov/apps10/ (last visited Sept. 25, 2017). While POMS Guidelines warrant respect, the Court of Appeals has made clear that "[POMS] regulations do not have the force of law." *Edelman v. Comm'r Soc. Sec.*, 83 F.3d 68, 71 n.2 (3d Cir. 1996).

POMS DI 25025.015 D was not in effect when the ALJ issued his decision, as it was promulgated in March 2015, nearly a year after the ALJ issued his decision.[2] Plaintiff cannot argue the ALJ erred on the basis of a provision that was not yet promulgated during the ALJ's decision. Furthermore, the ALJ is not required to identify and compare Plaintiff's alleged impairments with the POMS guidelines, as they do not have the force of law.

---

[2] Programs Operations Manual System (POMS), SOCIAL SECURITY ADMINISTRATION, https://secure.ssa.gov/poms.nsf/lnx/0425025015 (last visited Sept. 25, 2017).

## IV. CONCLUSION

For the reasons discussed above, the Commissioner's decision is **AFFIRMED.** An order follows.


Dated: 09/27/2013                                         /s Robert B. Kugler
                                                          ROBERT B. KUGLER
                                                          United States District Judge